IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

GRADY LARKIN McGOWAN                                          PLAINTIFF

      v.                              Civil No. 12-5190

SERGEANT SKORUP, Transportation,
Benton County Detention Center (BCDC);
SHERIFF KEITH FERGUSON, Benton County;
LIEUTENANT CARTER, BCDC;
CAPTAIN ROBERT HOLLY, BCDC; and
JOHN M. SELIG, Director of the Department
of Human Services                                            DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This is a civil rights action filed by the Plaintiff, Grady Larkin McGowan, pursuant to 42

U.S.C. § 1983.  Plaintiff proceeds *pro se* and *in forma pauperis*.

McGowan maintains his Due Process rights were violated when he was not transferred

to the Arkansas State Hospital (the ASH)  in accordance with a judgment of acquittal entered in

his criminal case.  The Benton County Defendants, Sergeant Skorup, Sheriff Keith Ferguson,

Lieutenant Carter, and Captain Robert Holly, have filed a motion for summary judgment (Docs.

53-55).  Separate Defendant John Selig has also filed a summary judgment motion (Docs. 56-

58).  Plaintiff has responded (Doc. 66) to the motions.  The motions are now ready for decision.

### 1.  Background

On November 30, 2010, a judgment of acquittal was entered in Benton County Circuit

Court acquitting McGowan of domestic battery in the first degree and aggravated assault.

*Benton County Defendants' Exhibit* (hereinafter *Defts' Ex.*) C-1; *Defts' Ex.* A at pg. 40;

*Plaintiff's Response* (hereinafter *Resp.*) at ¶¶ 5-6.  The order commits McGowan to the custody

of the Director of the Department of Human Services (DHS).  *Id.* at ¶ 8.  DHS was directed to

file a psychiatric or psychological report with the Circuit Court having venue within thirty-days of entry of the order.  *Id.*  The Benton County Sheriff was directed to deliver McGowan to DHS for evaluation and treatment.  *Id.*  This provision of the judgment of acquittal does not indicate when, or how quickly, the Sheriff should transfer McGowan.  *Defts' Ex.* C-1.

On January 21, 2011, McGowan's attorney filed a petition to summon the Director of the ASH to court to show cause why he should not be held in contempt.  *Defts' Ex.* D; *Resp.* at ¶ 23.  McGowan was transported to Court on February 14, 2011, and February 22nd.  *Defts' Ex.* C-3.  After a hearing held on February 22nd, McGowan was released from custody.  *Id.; Resp.* at ¶¶ 30 & 32-33.  McGowan was also ordered to report to Ozark Guidance Center within ten days of his release from custody.  *Id.* at ¶ 34.

The Division of Behavioral Health is a subdivision of the DHS.  *Defts' Ex.* B at pg. 4. The ASH is under the Division of Behavioral Health.  *Id.* at pg. 5.

Billy Burris is the programing coordinator for forensic services and ensures that forensic evaluations are conducted in a timely manner.  *Defts' Ex.* B at pg. 3.  The Benton County Circuit Court sent Burris a copy of the November 30th judgment of acquittal.  *Id.* at pgs. 7-8.

Upon receipt of a judgment of acquittal, a review is performed of the judgment and any previous evaluations.  *Defts' Ex.* B at pg. 11.  If the order "fits" with the evaluation, the individual is placed on the ASH waiting list.  *Id.*  If the order did not "fit" the evaluation, a call is placed to the prosecutor in order to get a judgment that matched the evaluation.  *Id.*

In McGowan's case, there were multiple evaluations.  *Defts' Ex.* B at pg. 13.  Burris believed there were problems with the judgment of acquittal.  *Id.* at pgs. 10-11. Burris noted that in the judgment of acquittal it referred to a report from Dr. Ross.  *Id.* at pg. 16.  However, the report contains a different case number and Dr. Ross concluded that McGowan lacked the capacity to effectively assist in his own defense.  *Id.*  Burris states that the Court cannot convict

AO72A
(Rev. 8/82)

or acquit an incompetent person. *Id.* at pg. 17. In that case, the ASH would ask for a treatment order to help the person gain fitness. *Id.*

In an effort to resolve the problems, he called the prosecutor about the problems he saw with the judgment. *Defts' Ex.* B at pgs. 18 & 29. Burris asked for an appropriate order related to the judgment of acquittal. *Id.* at pg. 18. An acquittal order means "the person has been acquitted by reason of mental disease or defect, and we are to treat that person, and then work with them as far as discharge planning and such." *Id.* at pg. 19. Burris did no follow-up. *Id.* at pg. 33. McGowan was not seen and no report was prepared. *Id.* at pgs. 33-37.

Skorup, the transport sergeant, received a copy of the judgment of acquittal on or about November 30, 2010. *Defts' Ex.* C at ¶¶ 1-4. Upon receipt of it, he called the ASH and was told McGowan would be put on a waiting list because there was no available bed space. *Id.* at ¶ 5.

On December 19, 2010, McGowan submitted a request to Skorup asking him what happened if he was not transported within thirty days as the court ordered. *Resp.* at ¶ 19 & pg. 38. Skorup responded that he had no control over the state hospital and McGowan would go when they called for him. *Id.*

On January 18, 2011, McGowan told Skorup, the transport sergeant, of the problems with the judgment of acquittal. *Defts' Ex.* A at pgs. 7 & 22; *Defts' Ex.* C at ¶ 6. This was the first Skorup heard that there was any problem with the judgment. *Defts' Ex.* C at ¶ 6. In turn, Skorup sent an e-mail to Laura Purscell and Stephanie McLemore of the Benton County Prosecuting Attorney's Office informing them of the problem with the language in the judgment of acquittal. *Defts' Ex.* A at pgs. 7 & 38; *Defts' Ex.* C at ¶ 7; *Defts' Ex.* C-2. Skorup did not draft any documents in reference to McGowan's criminal case. *Id.* Skorup did not transport McGowan to the ASH. *Id.* at pg. 6. Skorup did not contact the DHS again. *Resp.* at ¶ 22.

McGowan never spoke to Sheriff Ferguson about this issue. In fact, McGowan does not even know if the Sheriff was aware of the situation. *Defts' Ex.* A at pgs. 18-21. McGowan

-3-

indicates that Lieutenant Carter and Major Holly refused to speak with him regarding his incarceration status. *Id.* at pgs. 16-17.

As relief, McGowan seeks damages on a per day basis for the false imprisonment, compensatory damages for the denial of mental health care, and compensatory damages for mental anguish. He asserts that he suffered mental cruelty, emotional distress, loss of weight, and was injured during a fight. *Resp.* at ¶ 38.

### 2. **Applicable Standard**

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### 3. **Discussion**

The Benton County Defendants maintain they are entitled to summary judgment for the following reasons: there was no constitutional violation or intentional act by any Defendant; McGowan suffered no physical harm and cannot recover compensatory damages; there is no proof of personal involvement on the part of Sheriff Ferguson, Lieutenant Carter, and Robert

-4-

Holly; there is no proof of any unconstitutional policy, practice, or procedure to hold Defendants liable in their official capacities; and Defendants are entitled to qualified immunity on the individual capacity claims.

Selig first argues that he is entitled to sovereign immunity on the official capacity claims. Second, he argues he had no personal involvement in the court order not being implemented. Third, he argues McGowan cannot recover damages for emotional distress. Finally, he argues he is entitled to qualified immunity on any individual capacity claims.

**Prolonged Detention**

"To establish a claim under 42 U.S.C. § 1983, [a plaintiff] must show [1] a deprivation [under color of law] of [2] a right, privilege, or immunity secured by the Constitution or the laws of the United States." *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999).   "[A] public official is liable under § 1983 only 'if he causes the plaintiff to be subjected to deprivation of his constitutional rights.'"   *Baker v. McCollan*, 443 U.S. 137, 142 (1979)(citation omitted).

The undisputed facts show that: McGowan was acquitted on the criminal charges by reason of a mental disease or defect and a judgment of acquittal entered on November 30, 2010; he was committed to the custody of the Director of DHS; DHS was to file a report in thirty days; and the Sheriff was directed to deliver McGowan to the care and custody of the Director of the DHS for evaluation and treatment. It is also undisputed that neither the DHS nor the Sheriff complied with the court order.   A writ was issued for McGowan's release on February 22, 2011.

The question here is whether McGowan's continued detention at the county jail after the judgment of acquittal was entered directing his transfer to the custody of the Director of the DHS violated his constitutional rights. *Baker*, 443 U. S. at 142.   While McGowan's right was to transfer, evaluation, and treatment rather than release, I think it is proper to draw from case law dealing with the continued detention after a right to release is established.

**<u>Due Process</u>**

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law."   U.S. Const. amend. XIV, sec. 1.  The Supreme Court has interpreted this clause to provide "two different kinds of constitutional protection: procedural due process and substantive due process." *McKinney v. Pate*, 20 F.3d 1550, 1555 (11th Cir. 1994).

"The elements of a substantive due process claim are that the defendant violated a fundamental constitutional right of the plaintiff and that the alleged violation shocks the contemporary conscience."  *Southeast Arkansas Hospice, Inc. v. Burwell*, 2014 WL 2612061, *10 (E.D. Ark. June 11, 2014)(citations omitted).   The standard is high and the theory is limited to "truly egregious and extraordinary cases."  *Id.* (internal quotation marks and citation omitted); *see also, Terrell v. Larson*, 396 F.3d 975, 981 (8th Cir. 2005)(en banc)(question of law whether the conduct shocks the conscience).

> The elements of a procedural due process claim are that the plaintiff had a life, liberty, or property interest protected by the due process clause of the Fourteenth Amendment, that the plaintiff was deprived of that interest within the meaning of the due process clause, and that the state did not afford the plaintiff adequate procedural rights before depriving him of that interest.

*Southeast Arkansas Hospice*, at *10.

"Claims alleging the excessive detention of one who has established the right to be released are typically analyzed under the Due Process Clause."  *Golberg v. Hennepin County*, 417 F.3d 808, (8th Cir. 2005).  In *Golberg*, the Eighth Circuit said its prior opinions dealing with the "plaintiff's liberty interest in a timely release . . . suggest[ed] that the right to release from initially lawful detention is based upon the substantive component of the Due Process Clause, rather than the [reasonableness standard of the] Fourth Amendment.  But whatever the federal

-6-

constitutional right or rights at issue[,]" the Eighth Circuit stated its cases stood for the proposition that the plaintiff "must show [the defendant] was deliberately indifferent to that right to avoid summary judgment dismissing [his] § 1983 claim." *Goldberg*, 417 F.3d at 811. If the right at issue was substantive due process, a question the *Goldberg* court felt unnecessary to resolve on the case before it, the court noted the plaintiff "must also satisfy the demanding 'shocks-the-conscience' standard for substantive due process liability." *Goldberg*, 417 F.3d at 811 at n. 3.

To the extent McGowan seeks to assert a substantive due process claim, Defendants are entitled to summary judgment. There is no indication the Defendants intentionally violated the court order. To the contrary, both Skorup and Burris attempted to get the issue as to the language of the order resolved by contacting the prosecuting attorney. While their efforts could have, and probably should have, incorporated a procedure to follow-up with the prosecutor, their conduct clearly falls below the conscience shocking level. *See e.g., Akins v. Epperly*, 588 F.3d 1178, 1184 (8th Cir. 2009)(failure to investigate claim; evidence insufficient to establish a claim of conscience-shocking conduct).

Turning to the issue of whether a procedural due process claim has been stated, I note that the most analogous case is *Terry v. Hill*, 232 F. Supp. 2d 934 (E.D. Ark. 2002). This was a class action case in which the class consisted of:

> [a]ll persons charged with or under indictment for various criminal offense who are suffering for mental illness, are confined as inmates in detention facilities in Arkansas, and who have either been ordered by the circuit courts in the counties where charges are pending to undergo an inpatient forensic mental evaluation at the Arkansas State Hospital or ordered by a court to be committed to the Arkansas State Hospital for treatment.

AO72A
(Rev. 8/82)

*Id.* at 935.

The evidence introduced showed that the ASH had numerous inmates on the waiting list and that it could be a year or more before evaluation and treatment.  *Id.* at 939.  The Court held that:

> the delay in transferring court ordered pretrial detainees to the ASH for evaluation or treatment, amounts to punishment of the detainees.  The lack of in patient mental health treatment, combined with the prolonged wait in confinement, transgresses the constitution.  The lengthy and indefinite periods of incarceration, without any legal adjudication of the crime charged, caused by the lack of space at ASH, is not related to any legitimate goal, is purposeless and cannot be constitutionally inflicted upon members of the class.

*Id.* at pg. 943-44.  The Court concluded that "Plaintiffs' Constitutional rights to due process have been violated by the State of Arkansas."  *Id.* at pg. 945.

While Defendants seek to distinguish the case based on the facts of this case, I find little merit in their argument.  The State's duty is the same--to provide for the treatment of the insane. The same comprehensive set of statutes govern the fitness to proceed examination, the criminal responsibility examination, and acquittals based on mental health.  Ark. Code Ann. § 5-2-305 *et seq.*  The statutes set forth the circumstances under which the circuit court shall order the defendant committed to the custody of the DHS.  Ark. Code Ann. § 5-2-314(b)(1).  The statute requires the DHS to file a "psychiatric or psychological report with the probate clerk of the circuit court having venue within thirty (30) days following receipt of the order of acquittal." Ark. Code Ann. § 5-2-314(d)(1)(A).  If the report is not filed "the circuit court may grant a petition for writ of habeas corpus ordering the release of the defendant under such terms and conditions that are reasonable and just for the defendant and societal concerns about the safety of persons and property of others."  Ark. Code Ann. § 5-2-314(d)(2).

AO72A
(Rev. 8/82)

Here McGowan was acquitted of the criminal charges, committed to the custody of DHS, and only held for transfer to DHS. The prolonged detention was the result of DHS's conduct and not that of the Benton County Defendants. "Section 1983 liability is personal." *Dahl v. Weber*, 580 F.3d 730, 733 (8th Cir. 2009)(citation omitted). To recover from a Defendant individually Plaintiff must establish that [the Defendant] was personally involved in, or directly responsible for, [the Plaintiff's] prolonged incarceration." *Id.* Here, the BCDC Defendants cannot be held liable for continuing to detain McGowan when efforts made to transfer him to the ASH were rejected by DHS. The County Defendants had no authority to release McGowan until the writ of habeas corpus was entered. Further, there is no suggestion in this case that Benton County had a policy, custom, or practice of detaining acquitted individuals for extended periods of time prior to their transfer to the DHS.

**Compensatory Damages**

Defendants maintain that McGowan is barred from recovering compensatory damages because he suffered no physical injuries as required by the Prison Litigation Reform Act (PLRA). Codified as 42 U.S.C. § 1997e(e), section 803(d) of the PLRA provides as follows: "No Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."

The provision limits the available damages in the absence of a physical injury but does not preclude a Plaintiff from pursuing a claim. *See Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004)(The physical injury requirement of the PLRA "limit[ed] recovery for mental or emotional injury in all federal actions brought by prisoners" but does not bar the recovery of nominal and

-9-

AO72A
(Rev. 8/82)

punitive damages); *see also Pool v. Sebastian County*, 418 F.3d 934, 942 n.2 (8th Cir. 2005)(Section 1997e(e) presents an issue of damages under the PLRA).   Here, McGowan contends he lost weight as a result of the mental anguish he suffered as a result of his continued detention.  As McGowan's claims will proceed against Selig, I decline at this point to attempt to determine whether his claimed injury is sufficient to enable him to recover damages for his mental pain and suffering under § 1997e(e).

### Sovereign Immunity

Defendant Selig argues that the official capacity claims against him are barred by sovereign immunity.  I agree.  The claims are barred by the Eleventh Amendment.  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, (1989).  "The Eleventh Amendment bars suits against a State by citizens of that same State in federal court." *Williams v. Missouri,* 973 F.2d 599, 599 -600 (8th Cir. 1992) *(citing Papasan v. Allain,* 478 U.S. 265, 276 (1986)). "'This bar exists whether the relief sought is legal or equitable.'" *Id. (quoting Papasan*, 478 U.S. at 276). "Congress did not abrogate constitutional sovereign immunity when enacting the law that was to become section 1983."  *Burk v. Beene*, 948 F.2d 489, 493 (8th Cir. 1991)(*citing  Quern v. Jordan,* 440 U.S. 332, 342 (1979)).

### Selig's Liability

Selig, in his position of Director of the DHS, has a duty under the Arkansas Constitution and Arkansas statutes to provide treatment for the mentally ill. The judgment of acquittal committed McGowan to Selig's custody.  The evidence submitted with the summary judgment motions establish that judgments of acquittal were reviewed and if a perceived error existed to merely notify the prosecuting attorney in the involved county.  No follow-up is done to ensure

-10-

that the individual acquitted by reason of mental disease or defect is either transported to ASH or in some other manner evaluated and treated.  DHS does nothing to notify the court of the problem or to submit a report within the time frame established in the judgment of acquittal and the relevant Arkansas statutes.

### Qualified Immunity

With respect to the individual capacity claims, Selig maintains he is entitled to qualified immunity.  "Qualified immunity is a defense available to government officials who can prove that their conduct did 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Carroll v. Pfeiffer*, 262 F.3d 847, 849 (8th Cir. 2001)(*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)(*quoting, Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)).  The inquiry is normally one of pure law. *J.H.H. v. O'Hara*, 878 F.2d 240, 243 (8th Cir. 1989).

The issue of whether a state actor is entitled to the protection of qualified immunity involves a two-step process.  *See Washington v. Normandy Fire Protection Dist*., 272 F.3d 522, 526 (8th Cir. 2001) .  "[T]o overcome qualified immunity, [Plaintiff] must present sufficient facts to show not only (1) that the officer's conduct violated a constitutional right, but also (2) that the right was clearly established at the time of the alleged violation." *Peterson v. Kopp*, ___ F.3d ___, 2014 WL 2598740, *4 (8th Cir. June 11, 2014).

"Although the defendant bears the burden of proof for this affirmative defense [of qualified immunity], the plaintiff must demonstrate that the law was clearly established."

-11-

*Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007).  A right is clearly established if the contours of the right are "sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

The cases discussed above clearly establish that a detainee may not be punished and that prolonged detention amounts to punishment.  Having been acquitted of the criminal charges, McGowan's status became the equivalent of a pretrial detainee.  He was being held in custody solely for the purpose of being transferred to DHS.  Admittedly, McGowan was acquitted by reason of mental disease or defect rather than being held for a pre-trial mental evaluation; however, the legal concepts remain the same.  A reasonable official would have understood that such prolonged detention would run counter to clearly established constitutional right to due process.  Selig is not entitled to qualified immunity.

### 4.  Conclusion

For the reasons stated, I recommend: (1) that the Benton County Defendants' summary judgment motion (Docs. 53-55) be granted and all claims against Sergeant Skorup, Sheriff Keith Ferguson, Lieutenant Carter and Captain Robert Holly be dismissed with prejudice; (2) the motion for summary judgment (Docs. 56-58) filed by John Selig be granted with respect to all substantive due process claims; (3) the motion (Docs. 56-58) be granted with respect to the official capacity claims against Selig; and (4) in all other respects the motion for summary (Docs. 56-58) filed by John Selig be denied.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties**

-12-

**are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 21st day of July 2014.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

-13-