## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## FAYETTEVILLE DIVISION

### GRADY LARKIN McGOWAN

**PLAINTIFF**

**V.**                                   **CASE NO. 5:12-CV-05190**

**SERGEANT SKORUP, Transportation,**
**Benton County Detention Center (BCDC);**
**SHERIFF KEITH FERGUSON, Benton County;**
**LIEUTENANT CARTER, BCDC; CAPTAIN**
**ROBERT HOLLY, BCDC; and JOHN M.**
**SELIG, Director of the Department of**
**Human Services**                       **DEFENDANTS**

### OPINION AND ORDER

Currently before the Court is the Report and Recommendation ("R & R") (Doc. 69)

of the Honorable James R. Marschewski, Chief United States Magistrate for the Western

District of Arkansas, filed in this case on July 21, 2014.  The R & R addresses Separate

Defendants Sheriff Keith Ferguson, Lieutenant Carter, Sergeant Skorup, and Robert

Holly's (the "Benton County Defendants") Motion for Summary Judgment (Doc. 53), and

Separate Defendant John M. Selig's ("Selig") Motion for Summary Judgment (Doc. 56).

Plaintiff Grady Larkin McGowan ("McGowan") has filed objections to the R & R (Doc.

71), as has Selig (Doc. 70).  The Court has conducted a *de novo* review as to all proposed

findings and recommendations to which Selig and McGowan have raised objections. 28

U.S.C. § 636(b)(1). The Court finds that the Magistrate's recommendations should be, and

hereby are **ADOPTED IN PART AND DECLINED IN PART**.  The Court finds that both

Motions for Summary Judgment (Docs. 53 and 56) should be **GRANTED**, and McGowan's

Complaint (Doc. 1) **DISMISSED WITH PREJUDICE**.

## I. BACKGROUND

The Court adopts, in its entirety, the detailed facts set forth in the R & R, but finds it necessary to include additional facts material to the parties' objections. Billy Burris ("Burris") is employed by the State of Arkansas as a programming director for forensic services for Arkansas State Hospital ("ASH")—a subdivision within the Arkansas Department of Human Services ("DHS"). Burris determined that the state court's order of acquittal and transfer to Arkansas State Hospital (the "Order") did not properly correspond to an accompanying mental health evaluation. Initially, Burris was a named defendant, but McGowan later amended his complaint to substitute Selig, the Director of DHS (Doc. 28).

With respect to the claims against the Benton County Defendants, McGowan alleges that they violated his due process rights and subjected him to cruel and unusual punishment when they failed to comply with the Order. As a result, McGowan contends that he was detained in the Benton County Jail an extra 60 days without access to mental health treatment and psychiatric medication, which would have been available at the ASH.

With respect to his claim against Selig, McGowan alleges he was denied access to mental health treatment through ASH, and that ASH/Selig failed to file a psychiatric report within 30 days of acquittal, as ordered by the state court. In his May 17, 2013 deposition, McGowan admits that he never met nor communicated with Selig. McGowan has not alleged or offered proof that Selig had any personal knowledge of the Order or Burris' determination that it was facially defective.

McGowan seeks money damages from all Defendants, whom he sued in both their official and individual capacities.

-2-

The Magistrate found McGowan's prolonged detention was the result of DHS's conduct and not that of the Benton County Defendants. Thus, the Magistrate recommends that the Benton County Defendants' Motion for Summary Judgment be granted because they did not violate McGowan's due process rights—as there is no evidence or indication that they intentionally violated the Order. The Magistrate also recommends that McGowan's official-capacity claims against Selig be dismissed because of the sovereign immunity bar, but he finds that Selig is not entitled to qualified immunity and is therefore subject to suit in his individual capacity.

## II. THE OBJECTIONS

McGowan objects to the Magistrate's recommended dismissal of the Benton County Defendants, contending that they failed to commit him to the care of the Director of DHS within 30 days, and thus violated the Order. McGowan also contends that his mental illness should be viewed as a "physical injury," and that denying him mental or emotional damages is unconstitutional.

Selig objects to the finding that he is not entitled to qualified immunity. Selig also contends that McGowan's failure to establish an actual physical injury bars any claim for constitutional violations.

These objections are addressed in turn.

## III. DISCUSSION

### A. Whether the Benton County Defendants are Entitled to Dismissal

McGowan objects to the Magistrate's recommendation to dismiss the Benton County Defendants. However, a § 1983 action against individuals in their official capacity

is equivalent to a claim against the entity itself, requiring proof that an official custom or policy led to the constitutional deprivation. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). "Absent allegations that . . . . county practices involved more than a single set of circumstances relating only to [McGowan], these defendants must be dismissed." *Munz v. Parr*, 758 F.2d 1254, 1259 (8th Cir. 1985). McGowan does not provide evidence of unconstitutional actions beyond his own detainment.

Further, while it is undisputed that the Benton County Defendants did not timely transfer McGowan to DHS custody, the prolonged detention was not their fault. As the Magistrate properly found, efforts to transfer McGowan to ASH were rejected by DHS due to discrepancies in the Order. The Benton County Defendants had no authority to release McGowan (until the writ of habeas issued on February 22, 2014).

Therefore, the Benton County Defendants' Motion for Summary Judgment should be granted and the claims against them dismissed.

## B. Whether Selig is Entitled to Qualified Immunity for Personal Liability

Selig objects to the Magistrate's finding that he is not entitled to qualified immunity. Selig argues that nothing in the Complaint, Amended Complaint, or the materials attached thereto allege or evidence personal involvement on his part. Selig points to McGowan's admission during his May 17, 2013 deposition that he neither met nor communicated with Selig.

To obtain relief under 42 U.S.C. § 1983, "a plaintiff must prove (1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." *McDonald v. City of St. Paul,*

679 F.3d 698, 704 (8th Cir. 2012) (quoting *Shrum ex rel Kelly v. Kluck,* 249 F.3d 773, 777 (8th Cir. 2001) (citation omitted)). Section 1983 liability is personal, and to obtain relief, McGowan must plead that a government official has personally violated his constitutional rights. *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009); *Doran v. Eckold,* 409 F.3d 958, 965 (8th Cir. 2006)(en banc), *cert. denied,* 546 U.S. 1032 (2005).

In other words, McGowan must establish that Selig was personally involved in, or directly responsible for, McGowan's prolonged incarceration, *Mayorga v. Missouri,* 442 F.3d 1128, 1132 (8th Cir. 2006), or that Selig was deliberately indifferent to McGowan's plight, *Davis v. Hall,* 375 F.3d 703, 718 (8th Cir. 2004). *See also Williams v. Ludeman,* 469 Fed. Appx. 500, 501 (8th Cir. 2012) (per curiam) (denying § 1983 claims against Commissioner of Human Services where plaintiff failed to present evidence that defendant acted in other than a supervisory capacity)*; Clemmons v. Armontrout,* 477 F.3d 962, 967 (8th Cir. 2007) ("To establish personal liability of the supervisory defendants, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights."); *Ouzts v. Cummins,* 825 F.2d 1276, 1277 (8th Cir. 1987) ("[A] warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement.").

While the doctrine of *respondeat superior* does not apply to § 1983 cases, a supervisor may be held liable under § 1983 if either his direct action or his failure to properly supervise and train the offending employee caused the constitutional violation at issue. *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014) (internal citation omitted).

Even if a § 1983 violation has occurred, a defendant is entitled to qualified immunity if he can prove that his "conduct did 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Carroll v. Pfeiffer*, 262 F.3d 847, 849 (8th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The Supreme Court has generously construed qualified immunity protection to shield 'all but the plainly incompetent or those who knowingly violate the law.'" *Davis*, 375 F.3d at 711-12 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

In order to overcome qualified immunity, McGowan must present sufficient evidence to show: (i) that Selig's conduct violated a constitutional right; *and* (ii) that the right was "clearly established" at the time of the alleged violation. *Peterson v. Kopp*, 754 F.3d 594, 600 (8th Cir. 2014). The R & R addresses whether the right was clearly established, but does not make findings as to whether Selig's *individual* conduct violated McGowan's constitutional rights.

Both McGowan and the Magistrate rely on *Terry v. Hill*, 232 F. Supp. 2d 934 (E.D. Ark. 2002)—which does not address qualified immunity—for the general proposition that lengthy detention subsequent to a court order of transfer to ASH is a constitutional violation. The *Terry* case is distinguishable from the case at bar because McGowan was not a pre-trial detainee awaiting evaluation for fitness to stand trial. Instead, McGowan had been adjudicated and was found to have committed the offense charged. The trial court acquitted him, however, based on a finding of mental disease or defect,[1] McGowan was involuntarily "committed to the care and custody of the Director of the Department of

---

[1]McGowan apparently suffers from schizophrenia with re-occurring psychotic behavior. (Doc. 9).

Human Services for further treatment and evaluation" (Doc. 56-1). The Benton County Defendants were required to detain McGowan pending the acceptance of his transfer by ASH (or as it happened, until the writ of habeas issued in February 22, 2014). DHS had withheld acceptance of transfer because of a defect on the face of the Order.[2]

*Terry* seems to be the only case in this circuit which opines as to the length of detention necessary to qualify as "lengthy" when awaiting transfer to a mental health facility, to the point of violating a detainee's constitutional rights. The *Terry* plaintiffs were detained for more than eight months prior to transfer. McGowan, on the other hand, was detained at the Benton County Jail for about 60 days longer than contemplated by the trial court's defective Oder. This Court doubts whether 60 days prolonged detention under McGowan's circumstances surpasses a "clearly established" threshold—at which point a constitutional violation accrued. For the sake of argument, however, the Court will assume that McGowan has suffered a violation of a clearly established constitutional right.

For personal liability, as opposed to official capacity liability, the allegation and evidence against Selig must involve something more than "a duty under the Arkansas Constitution and Arkansas statutes to provide treatment for the mentally ill," and/or that "DHS [did] nothing" to notify the state court of a problem with the Order within the transfer time frame established by the judgment of acquittal. (Doc. 69, p.10). To make Selig

_____

[2]The findings of a pre-adjudication mental evaluation conducted by Dr. Robin Ross were referenced within and made a part of the trial court's Order. Dr. Ross' evaluation, however, contained a different case number than the Order, and Dr. Ross' findings were significantly misquoted and contradicted by the language of the Order. For example, Dr. Ross opined that McGowan lacked present capacity to effectively assist in his defense, but the trial court, in adopting Dr. Ross' findings, mis-stated that McGowan was fit to stand trial. Because of the apparent contradiction, Burris determined that the Order was insufficient and he contacted the prosecutor to request an amended and conforming order.

personally liable, there must be a facially plausible allegation that: (i) Selig was personally involved in or directly responsible for the detention; or (ii) that his inaction constituted deliberate indifference. *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995). "Personal involvement can be demonstrated with evidence that the officer personally directed the alleged wrongs or had actual knowledge and acquiescence of the wrongs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988). Deliberate indifference requires a highly culpable state of mind approaching actual intent. *Luckert v. Dodge Cnty.*, 684 F.3d 808, 819 (8th Cir. 2012), *cert. denied,* 133 S. Ct. 865 (2013) (internal quotation and citation omitted).

The Order committed McGowan to the "care and custody of the Director of the Department of Human Services." It is undisputed that Selig's duty to accept custody was merely incident to his official capacity. Therefore, McGowan's claim against Selig is not cognizable, because a suit against a person in his official capacity is the same as a suit against the state. *See Brandon v. Holt*, 469 U.S. 464, 471 (1985) (finding the Eleventh Amendment bars suit against state officials when sued in their official capacities, because it is the same as a suit against the state).

Selig's actions, as identified by the Magistrate, would support an official capacity claim against Selig—but that is the same as a claim against DHS, and thus barred by the Eleventh Amendment. The Magistrate has not identified, and this Court cannot find, any allegations or evidence of Selig's personal involvement in depriving McGowan of his constitutional rights. Selig was not personally involved in the decisions surrounding

McGowan's transfer. Selig's involvement relates solely to his official capacity and being the nominal "head" of DHS.

McGowan has not sufficiently stated a claim against Selig to survive a motion for summary judgment, and therefore, Selig's Motion for Summary Judgment will be granted.

## C.  Whether Lack of Actual Physical Injury Bars Claim for a § 1983 Violation

Both Selig and McGowan object to the Magistrate's finding regarding whether McGowan established a physical injury. Selig contends that McGowan must show physical injury as a predicate to bringing a claim for  constitutional violations premised on mental anguish damages.  McGowan, on the other hand, objects to what he perceived as the dismissal of his compensatory claims, and contends he is entitled to mental or emotional damages.

For the reasons set forth above, McGowan does not have a cognizable claim of liability against any Defendants.  Therefore, the parties' objections as to requisite damages are moot.[3]

## IV. CONCLUSION

The Magistrate's recommendation to grant the Benton County Defendants' Motion for Summary Judgment (Doc. 53) for violations arising under 42 U.S.C. § 1983 is

---

[3]This issue would have been resolved against McGowan regardless.  The Prison Litigation Reform Act, 42 U.S.C. § 1997e(e) provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  The Eighth Circuit has held, however,  in cases where no physical injury is suffered, § 1997e(e) does permit recovery of *other* types of damages, such as nominal, punitive, injunctive and declaratory relief. *See Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004). While some measure of damages may be available to a plaintiff who fails to identify a physical injury, in this case McGowan failed to establish the existence and/or causation of any such damages beyond mere conclusory statements.

consistent with the findings of the Court. The Court declines, however, to adopt the Magistrate's reasoning and recommendation to deny Selig qualified immunity. While it is regrettable that McGowan was detained longer than may have been necessary to consummate his commitment to ASH, the Court concludes that Selig is entitled to qualified immunity from the individual damages claim as a matter of law.

The Court, being well and sufficiently advised, finds that the Magistrate's Recommendations (Doc. 69) should be and hereby are **ADOPTED IN PART AND DECLINED IN PART**.

**IT IS THEREFORE ORDERED** that Separate Defendants Sheriff Keith Ferguson, Lieutenant Carter, Sergeant Skorup, and Robert Holly's Motion for Summary Judgment (Doc. 53) is **GRANTED**.

**IT IS FURTHER ORDERED** that Separate Defendant John M. Selig's Motion for Summary Judgment (Doc. 56) is **GRANTED**.

**IT IS FURTHER ORDERED** that Grady Larkin McGowan's Complaint (Doc. 1) is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED** this _____ day of September, 2014.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

-10-